UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTASHE GOLDEN, M.D.,,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SOUND INPATIENT PHYSICIANS MEDICAL GROUP, INC., AND DOES 1-10, inclusive,<br><br>　　　　Defendant. | No.  14-cv-00497-TLN-EFB<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court pursuant to Defendant Sound Inpatient Physicians Medical Group, Inc.'s ("Defendant") Motion to Strike (ECF No. 60) and Motion to Dismiss (ECF No. 59) Plaintiff's Third Amended Complaint ("TAC").  Plaintiff Otashe Golden ("Plaintiff") filed an Opposition to Defendant Sound's Motion to Dismiss.  (ECF No. 62.)  Defendant filed a Reply. (ECF No. 63.)  The Court has carefully considered the arguments raised in these filings.  For the reasons set forth below, Defendant's Motion to Strike is GRANTED IN PART and DENIED IN PART.  Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**I.　　Factual Allegations**[1]

Plaintiff, a medical doctor, became the Vice President of Medical Affairs and Chief

---

[1] The TAC has given a minimal recitation of the facts; the Court includes some background facts from the initial Complaint in order to make the parties' arguments and the Court's analysis coherent.

1

Quality Officer of Dameron Hospital (hereinafter "Dameron"), in 2008, a position she held until April 1, 2012.[2] (ECF No. 1 at ¶ 10.) Previously, Plaintiff was the medical director of the Dameron Hospitalist Program. (ECF No. 1 at ¶ 10.) Plaintiff is also the majority shareholder of the California Hospitalist Physicians, Inc. ("CHP"), a medical corporation providing primary care medical services for patients throughout Northern California. (ECF No. 1 at ¶ 15.) In 2009, CHP contracted with Dameron to provide services. (ECF No. 1 at ¶ 16.) At the end of this contract, April 4, 2012, the Chief Operating Officer of Dameron, Nicholas Arismendi, selected Defendant Sound Inpatient as the new hospitalist group for Dameron. (ECF No. 1 at ¶¶ 17, 19.)

On April 4, 2012, Plaintiff, in her personal capacity, entered into agreements with several doctors to provide services for their patients. (ECF No. 54 at ¶ 9.) Defendant competed with Plaintiff to provide hospitalist services. (ECF No. 54 at ¶ 10.) Plaintiff posted a list, in the emergency room, of doctors who designated her as the hospitalist for their patients. (ECF No. 54 at ¶ 11–12.) In an effort for individuals to change their designations from Plaintiff to Defendant, Defendant sent letters to providers saying Plaintiff did not practice at Dameron anymore; sent a nurse to visit offices of providers stating Plaintiff was not practicing at Dameron anymore; and telling employees to inform Dameron emergency room staff not to check anymore whether Plaintiff was designated as hospitalist for patients, because all those patients were now assigned to Defendant. (ECF No. 54 at ¶ 13.)

**II.   Procedural Background**[3]

On April 3, 2015, Plaintiff filed her TAC, alleging: (1) Violations of California's Business and Professions Code Section 17500 ("Section 17500"); and (2) Violations of California's Business and Professions Code Sections 17200 and 17203.[4] (ECF No. 54.) On May 6, 2015,

---

[2] The Court uses the blanket term "Dameron" with the understanding that there may be relevant distinctions between Dameron Hospital and the Dameron Hospital Association, which was a Defendant in the initial Complaint. That distinction could be relevant, as discussed below, to allegations that Defendant told various third parties that Plaintiff was not practicing "at Dameron." (TAC ¶ 13.)

[3] Plaintiff previously filed an initial complaint, a first amended complaint, and a second amended complaint, which were each dismissed by the Court with leave to amend.

[4] Cal. Bus. & Prof. Code § 17203 provides that a court may provide injunctive relief for a violation of California's unfair competition laws, e.g. §§ 17200 and 17500. In light of Plaintiff's non-opposition to Defendant's motion to strike injunctive relief from the TAC, discussed *infra*, the Court addresses Plaintiff's second claim only relative to

2

Defendant filed a Motion to Dismiss (ECF No. 59) and a Motion to Strike (ECF No. 60). Plaintiff has filed a Non-Opposition In Part to the Motion to Strike (ECF No. 61) and an Opposition to the Motion to Dismiss (ECF No. 62). Defendant has filed Replies. (ECF Nos. 63 & 64.)

## III. Standard of Law

### A. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A court will only consider striking a defense or allegation if it fits within one of these five categories. *Yursik v. Inland Crop Dusters Inc.*, No. CV–F–11–01602–LJO–JLT, 2011 WL 5592888, at *3 (E.D. Cal. Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010)). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Id.* Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979); *see also* Fed. R. Civ. P. 15(a)(2). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the claims through discovery. *See generally Whittlestone*, 618 F.3d at 974–75.

### B. Motion to Dismiss

FRCP 8(a) requires that a pleading contain "a short and plain statement of the claim

---

§17200, and not §17203.

showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims . . . across

1  the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While

2  the plausibility requirement is not akin to a probability requirement, it demands more than "a

3  sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a

4  context-specific task that requires the reviewing court to draw on its judicial experience and

5  common sense." *Id.* at 679.

6  In ruling upon a motion to dismiss, the court may consider only the complaint, any

7  exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of

8  Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu*

9  *Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal.

10 1998).

11 If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

12 amend even if no request to amend the pleading was made, unless it determines that the pleading

13 could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

14 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995));

15 *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

16 denying leave to amend when amendment would be futile). Although a district court should

17 freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

18 deny such leave is 'particularly broad' where the plaintiff has previously amended its

19 complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

20 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

21 **IV.  Analysis**

22 A. Motion to Strike

23 Defendant moves to strike Claim I, violations of Section 17500, because the introduction

24 of a new claim in Plaintiff's TAC exceeded the scope of the amendment the Court authorized in

25 its order granting the previous motion to dismiss. (ECF No. 60 at 2.) The Court also views

26 Defendant's motion as seeking to strike Plaintiff's claims for injunctive relief and disgorgement

27 of profits from this action as a whole. (ECF No. 60 at 2.)

28 Plaintiff has filed a Non-Opposition to Defendant's Motion to Strike, to the extent it seeks

5

to strike injunctive relief and disgorgement of profits. (ECF No. 61.) Consistent with how the Court views Defendant's motion as stated herein, the Court construes Plaintiff's Non-opposition to this portion of the Motion to Strike as a concession that claims for injunctive relief and disgorgement of profits be stricken from this action as a whole. The Court grants Defendant's Motion to Strike to the extent conceded by Plaintiff. Otherwise, the Court does not strike Plaintiff's claim for a violation of Section 17500, since inclusion of this claim is not outside the scope authorized by the Court's previous Order. In fact, said Order dismissed Plaintiff's UCL claim (Claim II in the TAC), in part, based on Plaintiffs failure to plead a predicate law violation for a UCL claim. Presumably, the instant Section 17500 claim is meant to address that deficiency.

B. Motion to Dismiss

*i. Defendant's preliminary argument*

Defendant argues: "Plaintiff's TAC represents at least the sixth attempt Plaintiff has made to assert a claim against [Defendant] … Plaintiff previously brought claims against [Dameron] and Nicholas Arismendi, among others, in case number 2:12-CV-00751-LKK-EFB … [That action] is stayed pending completion of arbitration … Plaintff brings this, her second federal court action, based upon the same general set of facts and allegations as first her action … The FAC, SAC, and *now* TAC name only [this Defendant] … to accomplish Plaintiff's unstated goal of avoiding arbitration." (ECF No. 59 at 4–5.) The Court notes that Plaintiff's Opposition (ECF No. 62) does not respond to this preliminary statement by Defendant.

*ii. Standing*

Defendant argues that Plaintiff's TAC fails to state a claim pursuant to FRCP 12(b)(6) because she does not allege sufficient facts to show she has standing to pursue a claim under Section 17200 or Section 17500. (ECF No. 59 at 9.) Standing "is limited to those who have lost money or property by reason of the challenged practice." *Animal Legal Defense Fund v. HVFG LLC*, No. C 12-05809 (WHA), 2013 WL 3242244, at * 3 (N.D. Cal. June 25, 2013). *See Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 322 (2011). The Court interprets the TAC as alleging that Plaintiff has lost money as a result of patients not seeking her services anymore. *See* Pl.'s

1  Opp., ECF No. 62 at 3 ("Due to the false statements of Defendant those physicians terminated
2  those agreements resulting in loss of monies which were paid to Defendant").  Therefore, Plaintiff
3  has standing to sue under Sections 17200 and 17500.
4        *iii. Claim 1: Cal. Bus & Prof. Code § 17500*
5        Section 17500 states: "It is unlawful for any person [or] corporation … with intent directly
6  or indirectly to dispose of real or personal property or to perform services … or to induce the
7  public to enter into any obligation relating thereto, to make or disseminate … any statement,
8  concerning that real or personal property or those services, professional or otherwise, or
9  concerning any circumstance or matter of fact connected with the proposed performance or
10 disposition thereof … which is untrue or misleading, and which is known, or which by the
11 exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof.
12 Code § 17500.
13       The relevant allegations in the TAC are: on April 4, 2012, Plaintiff, in her personal
14 capacity, entered into agreements with several doctors to provide services for their patients.  (ECF
15 No. 54 at ¶ 9.) Defendant then competed with Plaintiff to provide hospitalist services.  (ECF No.
16 54 at ¶ 10.)  Plaintiff posted a list in the emergency room of doctors who designated her as the
17 hospitalist for their patients.  (ECF No. 54 at ¶ 11–12.)  In an effort to have individuals change
18 their designations from Plaintiff to Defendant, Defendant sent letters to several doctors saying
19 Plaintiff did not practice at Dameron anymore; sent a nurse to visit offices of providers stating
20 Plaintiff was not practicing at Dameron anymore; and told employees to inform Dameron
21 emergency room and admissions staff not to check anymore whether Plaintiff was designated as
22 hospitalist for patients, because all those patients were now assigned to Defendant.  (ECF No. 54
23 at ¶ 13.)
24       Defendant argues: 1) the facts pled do not demonstrate Defendant was engaged in
25 "advertising" per se with respect to Plaintiff's position as a hospitalist; 2) the public was not
26 harmed or deceived by the communications allegedly sent by Defendant, only providers; 3)
27 Plaintiff has not demonstrated reliance on Defendant's communications.  (ECF No. 59 at 10–11.)
28 Among the authorities cited by Defendant in support are: *Haskell v. Time, Inc.*, 857 F. Supp.

1392, 1398 (E.D. Cal. 1994); *Lavie v. Procter & Gamble Co.* 105 Cal. App. 4th 496, 508 (2003); and *Laster v. T-Mobile USA, Inc.* 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).

With respect to the first argument, a close reading of the statutory language leads this Court to agree with Defendant that Plaintiff has simply not identified advertising undertaken by Defendant as is intended by the language of Section 17500. The relevant language from Section 17500 refers to false statements disseminated: "in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet." Cal. Bus. & Prof. Code § 17500. On the one hand, the all-inclusive language of "any other manner or means whatever" could include the communications at issue here (letters, a nurse's statements to providers, telling employees not to check whether Plaintiff had been designated as the hospitalist). However, section 17500 as a whole clearly refers to advertising, and there is a common sense difference between the communications at issue here and advertising. Finding for Plaintiff on this point would mean that nearly any false statement connected with the sale of a product/service constitutes false advertising.

With respect to the second argument, the language of Section 17500 clearly refers to the harm an advertisement may cause to the public: "It is unlawful to … induce the *public* to enter into any obligation relating to [the advertised services] … [or] to make or disseminate or cause to be made or disseminated before the *public* in this state [the false advertisement]" (emphasis added). Plaintiff has not provided any proof that the public was induced or that a false advertisement was disseminated to the public. Instead, Plaintiff alleges that Defendant sent letters targeting individual providers, made statements to providers, and told employees not to check on Plaintiff's status. The Court finds that these sporadic, infrequent means were not directed at the public for purposes of section 17500. Further, the prevailing standard used by California courts in considering a section 17500 claim is the advertisement's effect on the consumer. *See Lavie*, 105 Cal. App. 4th at 506–7, 508, 512 (collecting cases) ("unless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer") ("the standard applied in UCL and false advertising cases is that of the

ordinary consumer acting reasonably under the circumstances"); *Churchill Village, L.L.C. v. General Elec. Co.* 169 F. Supp. 2d 1119, 1131 ("A reasonable consumer standard applies to a false advertising claim under the UCL"). The TAC does not specifically allege a manner in which consumers (for instance, patients) were deceived or harmed, just that medical providers and staff were the recipients of false statements.

Because the Court finds the two arguments above establish grounds for dismissal, the Court GRANTS Defendant's Motion to Dismiss with respect to Section 17500 (Claim I).[5]

Factors to consider when deciding whether to deny leave to amend include whether there is: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Defendant argues that Plaintiff has brought the instant claims to avoid arbitration. Defendant highlights the fact that similar claims were brought in Case No. 2:12-CV-00751-LKK-EFB, which is stayed pending completion of arbitration. This is the third amended complaint. The Court does not view the instant allegations to suggest that a Section 17500 claim will be found viable if further amendment is granted, because no facts related to advertising are present in the TAC. In light of these considerations, the Section 17500 claim is DISMISSED WITHOUT LEAVE TO AMEND.

   *iv. Claim II: Cal. Bus & Prof. Code § 17200*

Section 17200 prohibits "any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code § 17200.

With respect to the "unlawful" prong of Section 17200, "[b]y proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Belton v. Comcast Cable Holdings, LLC,* 151 Cal. App. 4th 1224, 1233 (2007) (internal quotation marks omitted).

---

[5] The Court does not address the third argument for dismissal of the Section 17500 claim, stated above.

1    "[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful
2    prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). Section
3    17500 would be the predicate law in this case, and since that claim has been dismissed, Plaintiff
4    does not state a claim under the "unlawful" prong of Section 17200.

5    With respect to the "fraudulent" prong, Plaintiff does not plead that she "actually and
6    justifiably relied upon" a misrepresentation or omission made by Defendant. *See Khan v.
7    CitiMortgage, Inc.,* 975 F. Supp. 2d 1127, 1139 (E.D. Cal. 2013) (internal quotations marks
8    omitted) ("There must be a showing that the defendant thereby intended to induce the plaintiff to
9    act to his detriment in reliance upon the false representation and that the plaintiff actually and
10   justifiably relied upon the defendant's misrepresentation in acting to his detriment."). Plaintiff
11   does not allege that she agreed with Defendant that she was designated the hospitalist for certain
12   patients, only that she agreed with several doctors, who are not defendants, that she be the
13   hospitalist.

14   With respect to the "unfairness" prong of a Section 17200 claim, "the word 'unfair' means
15   conduct that threatens an incipient violation of an antitrust law, or that violates the policy or spirit
16   of one of those laws because its effects are comparable to a violation of the law, or that otherwise
17   significantly threatens or harms competition." *Cel-Tech Commc.'ns, Inc. v. Los Angeles Cellular
18   Tel. Co.,* 20 Cal. 4th 163, 187 (1999). This Court previously ruled that Plaintiff's stated facts (in
19   the SAC) did not amount to unfair conduct. (ECF No. 53 at 11.) For example, the Court noted
20   that Plaintiff did not provide specific details about the agreements she entered into with various
21   doctors regarding future hospitalist services, including whether those agreements were exclusive.
22   Plaintiff did not clarify why the competition alleged in the SAC between her and Defendant was
23   not in fact lawful competition. (ECF No. 53 at 7, 9.) The SAC alleged only that Defendant told
24   staff to ignore a list provided to Defendant and posted in the emergency room, designating
25   Plaintiff as the hospitalist for certain patients. (SAC, ECF No. 33 ¶¶ 7–10.)

26   The new allegations in the TAC are that Defendant, via letter and via statements of
27   employees, made "written or oral false statements," including sending letters to providers "saying
28   [Plaintiff] was not practicing at Dameron anymore," and causing a nurse employed by Defendant

to tell providers that Plaintiff was not practicing at Dameron anymore. (TAC ¶ 13.) If Plaintiff is alleging that Defendant falsely told providers she was not practicing at Dameron anymore, the Court will infer that Plaintiff is alleging she was in fact practicing in some capacity at Dameron hospital or with the Dameron Hospital Association. The Court finds these allegations, accepted as true, to nudge the TAC's Section 17200 claim past the threshold to state a plausible claim for relief. Defendant made various false statements to providers that Plaintiff, in addition to not being designated as the hospitalist for certain patients, was not even practicing at Dameron. The Court finds that repeatedly making such false statements with the aim of drawing patients away from Plaintiff states a claim for unfair competition under Cal. Bus. & Prof. Code § 17200. Defendant points out that "alleging unfair business practices under [the UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993); ECF No. 59 at 12. However, Plaintiff has identified the providers who were allegedly given false information, and the employees of Defendant who were allegedly instructed to give false information. (TAC ¶ 9, 13.) The relevant time period is some point after April 4, 2012. The TAC contains "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**V.    Conclusion**

For the foregoing reasons:

- Defendant's Motion to Strike (ECF No. 60) is GRANTED IN PART and DENIED IN PART. Plaintiff is therefore precluded from seeking injunctive relief and disgorgement in this action.
- Defendant's Motion to Dismiss (ECF No. 59) is GRANTED with respect to Claim I, Cal. Bus. & Prof. Code § 17500. Claim 1 is DISMISSED WITH PREJUDICE.
- Defendant's Motion to Dismiss (ECF No. 59) is DENIED with respect to Claim II, Cal. Bus. & Prof. Code § 17200.
- This action is brought solely against Defendant Sound Inpatient Physicians Medical

Group, Inc. under Cal. Bus. & Prof. Code § 17200.[6]

Dated: December 10, 2015

Troy L. Nunley
United States District Judge

---

[6] The previous SAC brought claims for interference with a prospective economic advantage and interference with the right to practice a profession, which were dismissed by the Court's previous Order (ECF No. 53). Those claims were omitted from the instant TAC.